IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jamie De Avila, | ) |
|       *Plaintiff*, | ) ) ) |
|     -vs- | ) No. _____ ) |
| Timothy Murphy and City of Chicago, | ) *(Jury Demand)* ) ) |
|       *Defendants*. | ) ) |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

2. Plaintiff Jamie De Avila is a resident of the Northern District of Illinois.

3. Defendant Timothy Murphy was, at all relevant times, acting under color of his office as a Chicago police detective.

4. Defendant City of Chicago is an Illinois municipal corporation. Plaintiff sues defendant City directly and as the potential indemnitor of defendant Murphy.

5. On June 2, 2021, defendant Murphy was working in a one-person unmarked police vehicle when he pursued and arrested plaintiff for allegedly failing to stop at a red light.

6. Defendant Murphy arrested plaintiff on the 3700 block of South Pulaski Road in Chicago.

7. In the course of arresting plaintiff, defendant Murphy notified the Chicago police dispatcher that he required assistance immediately.

8. At all relevant times, a radio call that an officer needs immediate assistance is a high priority message and results in other officers putting aside their obligations to travel as quickly as possible to the location of the call.

9. Five or more police cars responded to Murphy's message that he required immediate assistance.

10. The officers who responded to Murphy's call for immediate assistance learned that the only assistance he required was for an officer to provide him with a ticket book to write a traffic citation for the alleged red light violation.

11. To cover up his overreaction to the alleged traffic violation, defendant Murphy claimed that he discovered a bag of drugs in plaintiff's vehicle.

12. This claim is false: Plaintiff did not have any drugs in his vehicle and any drugs found in plaintiff's vehicle were planted by defendant Murphy.

13. Defendant Murphy prepared official police reports containing his false claim, attested to the false claim through the official police reports, and communicated the false claim to prosecutors.

14. As a result of Murphy's above-described wrongful acts, plaintiff was charged with drug possession, deprived of liberty as a pre-trial detainee, and he suffered other injuries from being wrongfully prosecuted.

15. The prosecution ended without a conviction when the prosecutor dismissed the charges against plaintiff on April 27, 2022.

16. At all relevant times, the Chicago Police Department maintained official policies, practices, and customs that facilitated, encouraged, and condoned defendant Murphy's misconduct.

17. Specifically, defendant City of Chicago has known and encouraged a "code of silence" among its police officers that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

18. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you

don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

19. This code of silence facilitated, encouraged, and enabled defendant Murphy to engage in misconduct for many years, knowing that his fellow officers would cover for him and help conceal his wrongdoing.

20. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

21. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

22. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and

policies that are also baked into the labor agreements between the various police unions and the City."

23. As determined by the United States Department of Justice in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, at 75:

    a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

    b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

    c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

24. The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

25. On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

26. In October 2020, then-Chicago Police Superintendent David Brown acknowledged in public comments that the code of silence continues to exist.

27. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

28. Before engineering plaintiff's above-described wrongful arrest, detention, and prosecution, defendant Murphy had been the subject of at least 50 formal complaints of official misconduct.

29. Despite these many allegations of wrongdoing, and as the direct and proximate result of the code of silence, none of these allegations of wrongdoing resulted in discipline sufficient to deter defendant Murphy's wrongdoing.

30. By maintaining its code of silence, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

31. The code of silence gave defendant Murphy comfort and a sense that he could violate plaintiff's rights and not be disciplined.

32. The code of silence emboldened defendant Murphy to frame plaintiff.

33. The code of silence provided defendant Murphy with good reason to believe that he would effectively be immune from any sanction for his wrongdoing.

34. The code of silence encourages Chicago police officers to frame innocent persons because the officers know they will not be meaningfully disciplined, and it encouraged defendant Murphy to frame plaintiff.

35. As a direct and proximate result of the City's code of silence, defendant Murphy concocted the false story and fabricated evidence against plaintiff.

36. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

37. Plaintiff hereby demands trial by jury.

WHEREFORE, plaintiff requests that appropriate compensatory and punitive damages be awarded against the defendants Murphy, that appropriate compensatory damages only be awarded against defendant City of Chicago, and that fees and costs be taxed against all defendants.

/s/ <u>Joel A. Flaxman</u>
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*